## EBENEZER CAPEN *vs.* FRANCIS ALDEN & Trustee.

A debtor gave his creditor a mortgage of personal property to secure a balance of account : The dealing of the parties was afterwards, continued, and the debtor, on being pressed for payment on account, told the creditor that he would endeavor to pay him for the articles he had received after the mortgage was given, and keep the subsequent accounts paid up ; but that, as the creditor had security on the former part of the accounts, he must wait for payment of that part : The debtor afterwards made payments, from time to time, which were credited to him, generally, on the creditor's book, and which exceeded the amount that was due when the mortgage was given, but were less than the amount of the articles afterwards furnished to him by the creditor . At the time when these payments were made, the creditor considered them as made towards payment of the articles furnished to the debtor subsequently to the mortgage : The creditor sold part of the mortgaged property, and took part thereof to his own use ; but the property, so taken by him, and the money received on the sale, were not sufficient to discharge the balance due to him when the mortgage was given.

*Held,* that the payments made after the giving of the mortgage, though credited generally, on the creditor's book, might be applied by him towards payment of the subsequent accounts; and that he was not chargeable in the process of foreign attachment, as trustee of the debtor, by reason of his retaining part of the mortgaged property, and the proceeds of the sale of the other part thereof.

THE following facts appeared from the answers of Abiathar Richards, who was summoned as trustee of Alden, the principal defendant : Said Alden made two mortgages of personal property to said Richards ; the first, on the 13th of October 1837, of property worth about $250 ; the second, on the 17th of November 1838. When the first mortgage was given, Alden owed said Richards $340, and when the second was given, he owed him $539. The sums thus due from Alden were balances of accounts for provisions furnished to him, for his tavern in Dedham, by said Richards. Alden afterwards made some pay-

Capen v. Alden & Trustee.

ments, for which Richards gave him credit ; but at the time of
the service of the present process on Richards, Alden owed
him $ 633, a balance of account, besides a note of about $ 40.
Part of the mortgaged property had been sold by Richards, for
$ 100, and another part thereof, worth about $ 125, he had
applied to his own use.

Said Richards annexed his books to his answer, containing an
exact account of all the articles furnished by him to Alden, and
of all the moneys received by him of Alden, since 1832 ; and
he stated, that the moneys credited in the books, the property
embraced in the aforesaid mortgages, the note before mentioned,
and a mortgage of real estate, (which was subject to a prior
mortgage thereon,) dated April 16th 1838, to secure $ 300,
were all the moneys or property which he had, in any way,
received from Alden.

Richards further stated, in his answer, that after he received
said mortgages of personal property, he continued to furnish
provisions to Alden, (as by his said books appeared,) and " that
he considered the property, which was mortgaged, as security
for that part of the account due at the time the mortgages were
made, so far as they were of sufficient value ; and that whenever
said Alden afterwards paid him any sum of money, which is
credited upon said books, he considered it, at the time of pay-
ment, as made towards payment for the articles delivered sub-
sequently to the mortgages, for which he had no security ; and
whenever he sold any of the mortgaged property, or took any
of it for his own use, he considered the sum of money he had
received for the property so mortgaged, or the value of it, which
he was to allow to said Alden, as so much toward the payment
of the account which was due at the time of the making of the
mortgage, and which the property was mortgaged to him to
secure ; that about two or three months after the mortgage was
given to him, which bears date November 17th 1838, he pressed
said Alden to pay him some money on his account, and that said
Alden then stated to him that he would try to raise money and
pay for what he had of him (Richards) after the mortgages, and
keep those accounts paid up ; but as he (Richards) had some

23 *

security upon the others, he must wait for that part of the account."

*Wilkinson*, for the plaintiff.

*Merrick & Cleveland*, for the trustee.

HUBBARD, J.   The only question in this case respects the application of the proceeds, or value, of the property mortgaged oy the defendant to Richards, the trustee.   The plaintiff contends that Alden owed Richards only on a running account kept in the book of the latter ; and that the two mortgages were given, as is expressed on the face of them, to secure moneys due and owing on account; and that by applying the payments made by Alden, subsequent to the date of the mortgages, according to priority of time, the amounts due, when the mortgages were given, have been paid ; and in consequence of it, the mortgaged chattels, now remaining in the hands of Richards, and the proceeds of those sold, being freed from his lien, are the property of Alden, and, as such, liable to be attached, or subject to the trustee process.   Under these circumstances, the plaintiff seeks to charge Richards as the trustee of Alden.

To support the proposition, that the chattels and proceeds are liable to the trustee process — admitting, for this purpose, that the moneys for which the mortgages were given as security have been paid — the plaintiff relies upon the cases of *Jarvis* v. *Rogers*, 15 Mass. 389, and *Allen* v. *Megguire*, 15 Mass. 490.

In the case of *Jarvis* v. *Rogers*, p. 397, the point decided was this : " If a debtor obtain of his creditor a loan of money on pledge, upon an express agreement that the pledge shall be restored on the repayment of the loan ; the creditor cannot retain the pledge as security for a prior debt, without violating the principles of good faith."   But in the present case, the goods were not mortgaged for a specific debt, but generally for moneys due on account ; the balance of which account, in the view taken by the plaintiff, now remains unpaid.

In the case of *Allen* v. *Megguire*, the court decided that " a mere creditor, happening to have in his possession specific articles belonging to his debtor, has no lien upon them.   He must attach, as other creditors, if he would avail himself of

them." And if they are so kept by him, as not to be exposed to an attachment by others, he may be summoned and held to answer as the trustee of his debtor. As it respects this decision, however, it is said by Story J. in *Picquet* v. *Swan*, 4 Mason, 465, that there is a very material qualification of this case in the later one of *Hathaway* v. *Russell*, 16 Mass. 476, in which the court say, that the trustee " is to be allowed all his demands against the principal, of which he could avail himself in any form of action, or any mode of proceeding between himself and his principal ; whether by way of set-off on the trial, as provided by our statutes ; or by setting off the judgments under an order of court ; or by setting off the execution in the hands of the sheriff, as is also provided by statute. If this were not so, the trustee would be injured by having his claims thus drawn in, to be settled incidentally in a suit between strangers."

Applying these principles, thus laid down, to the case at bar, it is clear that if Alden were the plaintiff, demanding these chattels of Richards, the latter could, either by way of set-off, or by cross action, successfully resist the restoration of the chattels themselves, or the value of them when sold ; and all he would eventually be compelled to do, would be to credit the just amount in his account with Alden. But it is not solely on the view thus taken that we decide the case.

The next question for our consideration is, whether the moneys, which were received by Richards subsequent to the taking of the mortgages, but before the property mortgaged was taken to his own use or sold and turned into money, shall be appropriated to the discharge of the items of account prior in time to the date of the mortgages, or whether the property mortgaged shall be appropriated to such discharge.

The plaintiff, regarding this as a running account, contends that the payments, as they were received, shall go to the credit of the debtor, and so reduce his account from time to time, and thus discharge all previous debits, as far as such payments will go. And in the present case, by applying this rule, and relying on the authorities of *Jarvis* v. *Rogers* and *Allen* v. *Megguire*, the mortgaged property, considering it specially assigned to

secure sums previously due, is relieved from the lien of the mortgages, and becomes subject to the present trustee process.

As to running accounts, the plaintiff cites *Clayton's case*, 1 Meriv. 608, and *Bodenham* v. *Purchas*, 2 Barn. & Ald. 39 ; and they certainly do maintain the position, that in a running account between a banker and his correspondent, payments shall be applied to the extinguishment of preceding credits. In *Clayton's case*, Sir William Grant says, " in such a case, there is no room for any other appropriation than that which arises from the order in which the receipts and payments take place, and are carried into the account. Presumably, · 's the sum first paid in, that is first drawn out. It is the first item on the debit side of the account, that is discharged or reduced by the first item on the credit side. The appropriation is made by the very act of setting the two items against each other. Upon that principle, all accounts current are settled, and particularly cash accounts."

We do not doubt the correctness of these decisions ; that in *Clayton's case* having been made on great consideration, after a careful examination of the cases on the subject of the appropriation of payments. But we think the facts in the present case differ materially, as they are disclosed by the trustee, from those which appeared in the cases relied upon. This is not the case of merchant and merchant, with the various books in which their accounts are entered, from the day-book, &c. to the ledger, where every entry is made with precision, and balances are regularly struck ; but it is the account of a butcher supplying meats to an innkeeper, making a simple memorandum of his daily transactions.

On examining the books of Richards, coupled with his answer, we do not think they furnish satisfactory evidence that the account between these parties was simply a running account, as the plaintiff contends. It is true the entries are made daily, as the articles were delivered ; and payments are entered as they were made. But in applying mercantile rules to the case, it is obvious that the party has a right to post his entries, and to state his account in his books, according to the truth ; and in case of

mistakes, to make such alterations or transfers, as will rectify the errors, and thus preserve his rights. *Barker* v. *Blake*, 11 Mass. 16.

If therefore the mortgaged property was in fact to be applied to the payment of the preceding charges, the party, in posting his books, would have the right to make his entries in such a manner, as to make the fact of such application appear by appropriate credits. And this right is not lost by the mere omission to make such postings.

In looking at the answers of the trustee, to which, with the books, we can alone resort for the facts to guide us, we find that he considered that the property was mortgaged as security for the amount of the account due at the time the mortgages were made. And whenever Alden afterwards paid him any money, he considered it, *at the time of payment*, as made towards the payment of articles delivered subsequent to the mortgages, and for which he had no security. And on sale of, or assuming for his own use, the mortgaged chattels, he considered the proceeds as a payment, in part, of the money due at the time of taking the mortgages. And he further swears, that two or three months after taking the last mortgage, he pressed Alden to pay him some money on his account, and that Alden then stated that he would try to raise money, and pay him for what he had after the mortgage, and keep *those accounts* paid up ; but that, as he had some security upon the *others*, he must wait for that part of the account.

Whether the facts which existed when the trustee received the mortgages, and his own view of the subsequent payments, would constitute an appropriation by him of the mortgaged property and its proceeds, is not free from doubt ; but coupled with the statement to him by Alden, shortly after the making of the mortgages, when he was pressing Alden for money on account, we are of opinion that an appropriation was made, by consent of Alden, to the balance due at the time the mortgages were taken ; and that by agreement of the parties, the subsequent payments were appropriated to the reduction of the account for articles furnished after the mortgages were made.

With these views of the trustee's answer, we do not think it necessary to discuss the law relating to the appropriation of payments, but are of opinion that the trustee should be dis charged.