PRICE VS. DOWDY.

1. APPROPRIATION OF PAYMENTS: *Rule for.*
   In the absence of any agreement between the parties, or any actual appropriation of payments by either of them at the time, the law makes the appropriation. The rule for this, in case of successive charges, making a running account, and successive payments at different times, is to apply the payments to the charges in the order of their dates, extinguishing the oldest first. But this results from presumed intention of the parties. A different agreement may be shown by evidence.

2. RECEIVER; *When appointed for mortgaged property.*

When a mortgagor, or one who has created a lien upon land, enforceable in equity, is insolvent, and the land is insufficient to satisfy the decree when rendered, a receiver will be appointed to take charge of it, and secure the rents and profits during the litigation to enforce the lien.

APPEAL from *Crittenden* Circuit Court.

Hon. L. L. MACK, Circuit Judge.

*Lyles and Peters,* for appellant.

*Wright and Folkes, contra.*

EAKIN, J. The bill in this cause was filed by Dowdy, a commission merchant and cotton factor, of Memphis, Tennessee, against Fleming H. Price, a cotton planter of Crittenden county, Arkansas, to foreclose a lien on a certain plantation in said county, which had been created to secure Dowdy, as accommodation acceptor of two drafts of $1,500 each, drawn by F. H. Price in favor of Wm. R. Price, and accepted and paid by Dowdy. The drafts were drawn on the fifth of August, 1874, payable, one on the first of November, and the other on the first of January, following. There is no question of the lien or its validity.

F. H. Price, in his answer, claimed that the debt upon the drafts, due from him to Dowdy, as accommodation acceptor, had been covered by shipments of cotton, the proceeds of which should have been appropriated to the drafts; and that, in fact, he did not owe Dowdy any thing at all upon a fair settlement of their accounts. He charged that Dowdy had made an apparent indebtedness in his own favor, by false charges of commissions, interest, etc.; and made his answer a cross bill for the settlement of accounts; submitting that, if upon a fair accounting with Dowdy he should be found indebted, Dowdy might have the lien claimed.

Dowdy answered the cross bill, and stated that the accounts had been from time to time duly rendered to Fleming, and assented to, without objection; and that the shipments of cotton made by Fleming Price had been appropriated to the running account of Price for supplies, and other advances.

It appears from his exhibits of the different accounts stated, that he had charged up the acceptances, with commissions for accepting, against Price, at the time the same were made, just as other items of money or supplies; and that the balance on the account, stated for that period, was charged up in the next account stated.

If the proceeds of shipments of cotton are to be applied to the items of the account in the order of their date, the drafts will appear to be paid, and the lien will not remain for the general balance of accounts.

Upon this point Fleming Price deposes, that when he made shipments of cotton, he did so with the understanding that the proceeds were to be applied to the drafts, although it does not appear that he gave any specific directions, to that effect, at the time. Dowdy, on his part, testifies, directly and positively, that he accepted the drafts upon the express agreement and understanding with Fleming Price, that the drafts were to remain a permanent lien upon the land, and that credits were to be applied, as made, to the running account for advances and supplies; and that he would not have continued to advance money and supplies to Price on any other terms.

The different accounts stated were found to have been correctly taken from his books, and furnished to Price at stated times—to which he made no objection. Interest upon all of them was charged at the rate of 10 per cent. per annum. It was claimed by Price that legal interest

in Tennessee was 6 per cent., and that 10 per cent. was excessive. Dowdy proved that it was customary with business men and citizens to charge 10 per cent. interest in such cases, and that the money actually procured for Price, and advanced by Dowdy, had cost him 10 per cent. at the banks.

The last account stated brought the transactions of the parties down to May, 1876, when Price was shown to be indebted in a sum exceeding $3,000, which by subsequent charges undisputed, had been brought up to about $3,224. This account, rendered in May, had been acquiesced in by Price, and he had promised to pay it.

The cause was heard upon the pleadings and evidence, at the November term, 1877, of the Crittenden court. The chancellor held that the payments or shipments were properly applied to the running accounts, outside of the drafts, and that the lien remained for the balance due (which appears to be less than the drafts with interest), and that, the insolvency of the defendant being admitted, a receiver would be proper. He was of the opinion, however, that the interest charged had been excessive, and referred the accounts to the clerk, to state them on a basis of 6 per cent., and to report at once.

The clerk reported in a few days, at the same term showing a balance due of $2,937. Exceptions to the report were overruled, a decree rendered for complainant with order of sale, and a receiver was appointed to collect rents for the current year, and take care of the property. Price appealed.

In the absence of any agreement between the parties, or any actual appropriation of payments by either of them at the time, the law makes the appropriation. The rule for this—in case of successive charges making a running

Price vs. Dowdy.

account, and successive payments at different times—is, to apply the payments to the charges in the order of their dates—extinguishing the oldest first. Upon the face of the accounts stated in this case, it appears that Dowdy had charged his acceptances with commissions, as so much money advanced, along with other advances and supplies, without any mark of distinction as to these drafts, to show that they were held upon a different footing, with a separate lien for their payment independent of payments made on the general account.

If this were all, the rule would apply and the law would appropriate the proceeds of the cotton to these drafts in their due order of time, as these charges appear in the account. But this results only from a presumption of intention, and may be controlled by evidence. It was competent to show a different agreement. The complainant may have kept his account in this manner for convenience, and he is not estopped thereby. There is evidence to show an agreement that the proceeds should be applied, first to the open and unsecured account, reserving the acceptances to be paid last, and retaining the lien meanwhile as to them. Although the evidence is conflicting, the chancellor seems to have given most weight to the evidence of Dowdy on this point.

Considering all the circumstances, we are of opinion that he held correctly in determining that the lien was to be retained until all should be paid. The decree is for a balance of an account, and is, so far, not in apt language. It should have been, as prayed, for a balance on the acceptances, considering them as *pro tanto* unpaid. But this is only matter of form. The decree is for a less amount than the drafts with interest would cover, and the error in form is not prejudicial to defendant.

The defendant can not complain of the directions to the master to reopen the accounts, by charging 6 per cent. interest instead of ten. That was in his favor, and he admits in his pleadings that 6 per cent. was the lawful rate of interest in Tennessee, and was intended to govern the transaction.

There was no error in appointing a receiver. The insolvency of the defendant and the inadequacy of the security was not denied. In such case, it would be inequitable to allow defendant to take advantage of his own wrong, and by refusing payment to enjoy the rents and profits of the land during a protracted litigation without leaving a sufficiency in the *corpus* of the property to satisfy the decree when rendered. There is no distinction in this respect between a mortgage which gives the mortgagee a technical legal title, which he might enforce by a possessory action, and an agreement for a lien enforceable, as this was, only in equity. The principle is the same, and arises from no legal right to possession in the holder of the lien, which the receiver exercises in his stead, but *ex equo et bono*, from the nature of the case. The court impounds the property by virtue of its inherent power to enforce the equities which come within its cognizance.

In restating the account, the master has allowed no interest on either side until the rendition of the different accounts stated, and has calculated the interest at 6 per cent. from the time of each statement, upon the aggregate charges and the aggregate credits, in each statement respectively, until the time of the report. Each account stated stands by itself, bearing its own interest on the aggregate sum of its charges and credits from the date of rendition. No balances are struck nor amounts carried over into subsequent accounts. When all are stated, the

charges with their respective interests, and the credits with their interests, are all balanced at the time of the report. This mode of stating it is particularly favorable to defendant, and can not be recognized as a precedent fixing the correct principle. It deprives the creditor, in whose favor the balance may be, of the advantage of his greater amount of interest in the periods between the advances and the time of rendering the accounts. This is well illustrated in the case of these very acceptances. The bills fell due on the first of November, 1874, and the first of January, 1875. The amount of the principal only is charged in the account, and they are not made to bear interest until the tenth of June, 1875. There is no compounding of interest in this method, as claimed by the exception to the report. If there was a mistake, it was largely in favor of appellant.

We see no mistake in the report prejudicial to appellant, of any character, and think, without objection on the part of appellee, it was properly confirmed and made the basis of a decree.

Let the decree be in all things affirmed.