### MACK and others *v.* ADLER and others.

*(Circuit Court, E. D. Arkansas. October Term, 1884.)*

1. **APPROPRIATION OF PAYMENTS—RUNNING ACCOUNTS.**
   The rule for the appropriation of payments on running accounts is that the first item on the credit side of the account will be applied to extinguish the first item on the debit side of the account; but this rule has no force against an understanding of the parties to the contrary.

2. **SAME—WHEN SOME DEBTS DUE AND SOME NOT.**
   In the absence of an agreement to the contrary, the law will apply credits to extinguish debts which are due, in preference to debts which are not due.

3. **SAME—RIGHT BELONGS EXCLUSIVELY TO DEBTOR AND CREDITOR.**
   The exercise of the right of appropriation of payments belongs exclusively to the debtor and creditor, and no third party can be heard for the purpose of compelling a different appropriation from that agreed upon by them.

4. **SAME—MERCHANT'S BOOKS MAY BE EXPLAINED.**
   A merchant is not estopped from showing an understanding or agreement inconsistent with the deductions the law would draw from the face of his books unexplained.

In Equity.

*Cohn & Cohn,* for complainants.

*U. M. & G. B. Rose,* for defendants.

CALDWELL, J. On the ninth of December, 1881, Poe & Co., merchants, doing business at Clinton, in this state, were indebted to Adler, Goldman & Co., commission merchants, doing business in St. Louis, in the sum of $7,258.21. At this time, Adler, Goldman & Co. had on hand cotton for sale for account of Poe & Co., which it was estimated would reduce the amount due the former to about the sum of $3,400, and for this amount Poe & Co., on the day named, executed their note, payable to Adler, Goldman & Co., due January 1, 1883, and, to secure payment of the same, executed a deed of trust on lands to Jones, as trustee. After the maturity of the note, the trustee advertised the lands for sale under the deed, whereupon the plaintiffs filed this bill to enjoin the sale, upon the ground that they were

judgment creditors of Poe & Co., and that their judgment was a lien on the lands embraced in the deed of trust, but junior thereto, and that the debt secured by the deed of trust had been paid. Poe & Co. continued to do business with Adler, Goldman & Co. for a year or more after the execution of the deed of trust. During that time, Adler, Goldman & Co. paid a large amount of debts due from Poe & Co. to third parties, and advanced them money and goods on credit; and Poe & Co. shipped to Adler, Goldman & Co. cotton and other articles, and sold them the stock of goods they had on hand at the time of their failure, and a number of horses and mules, all of which were placed to the credit of Poe & Co. on the books of Adler, Goldman & Co. The books of the latter show a continuous running account, in which the items of debt and credit are entered at their appropriate dates. The balance due from Poe & Co., at the date of their failure in 1883, as shown by the books, was $5,497.75. This balance was all Poe & Co. owed Adler, Goldman & Co., and the books show it all to be due on account. But, in fact, $3,400, that went to make up this balance, had been included in the note secured by the deed of trust. No rest in the account was made at the date of the note, and it was not carried to the credit of Poe & Co. on the books. This method of keeping the books made Poe & Co.'s indebtedness on account appear to be more than it was by the amount of the note. From the date of the note down to the close of business relations between the parties there was always due Adler, Goldman & Co. a sum exceeding the amount of the note. It was understood between Adler, Goldman & Co. and Poe & Co. that the lien of the deed of trust should remain until all indebtedness was paid. It was a necessary implication from this understanding that in their subsequent dealings credits should be first applied to the indebtedness accruing after the execution of the note. Mr. Poe testifies that "it was not expected or intended by us that the payments should be applied to the payment of the note secured by the deed of trust," and the members of the firm of Adler, Goldman & Co. testify to the same effect.

The plaintiffs insist that Adler, Goldman & Co. must be held to the state of the case disclosed on the face of their books, and, after that is done, they insist upon the application of the rule that, in case of running accounts, the first item on the credit side of the account will be applied to extinguish the first item on the debit side of the account. The rule for the appropriation of payments in the case of running accounts is accurately stated, but it has no force when the proof shows an understanding of the parties to the contrary. *Price v. Dowdy,* 34 Ark. 285; 2 Whart. Cont. § 933. If regard is had to the books alone, the indebtedness existing at the date of the note, and which constituted its only consideration, would appear to be paid, and its payment would extinguish the note and the lien to secure its payment. But in fact that indebtedness has not been paid. The legal effect of the understanding of the parties was to segregate from

the account then due from Poe & Co. to Adler, Goldman & Co. the amount for which the note was executed, and extend the time of payment on that amount until the maturity of the note. It is true, there is nothing on the books of Adler, Goldman & Co. to indicate this understanding of the parties; but the failure to make their books harmonize with their agreement cannot operate to the prejudice of either party. The understanding of the parties may be shown and will control. As was said by Mr. Justice EAKIN in *Price* v. *Dowdy, supra,* "The complainant may have kept his account in this manner for convenience, and he is not estopped thereby." On the amount of the account carried into the note, which must be held to embrace the oldest items in the account, Adler, Goldman & Co. gave day of payment until January, 1883. As to this amount they could not enforce collection by suit until the maturity of the note. The credits on the account were made before the maturity of the note, and when debts in excess of the credits were due from Poe & Co.

On these facts, in the absence of an agreement, the law would apply the credits to extinguish the debts which were due, and not to the note which was not due, and, of course, not to the items of the account which constituted the consideration for the note. 2 Whart. Cont. § 931. But, independently of this rule, and of the original understanding of the parties, the plaintiffs' case fails. It will be observed that Poe & Co., the debtors, are not objecting, but consenting, to the appropriation made by the creditors. What right have the plaintiffs to demand a change in the appropriation of payments assented to by the debtor and creditor? Upon what principle can a stranger come between a creditor and his debtor, and dictate the appropriation of payments against the will of both? Adler, Goldman & Co. owed no duty to the plaintiffs. No principle of law or equity required them to apply the payments to their secured debt in order to give the plaintiffs the benefit of their security. The most the plaintiffs can demand is that the credits shall be applied to extinguish *bona fide* debts; and that has been done. Nor is it a fraud on the plaintiffs for Poe & Co. to consent that the credits shall be applied so as not to extinguish the secured debt. The debtors had an undoubted right to appropriate their credits to the payment of any debt they owed, whether secured or not. This was nothing but the exercise of the right of preference which belongs to every debtor. The question, whether an appropriation once made by agreement between the debtor and creditor can afterwards be changed to the prejudice of other creditors of the debtor who have acted on the faith of the first appropriation, does not arise in this case. Here the debtor and creditor are insisting on the appropriation agreed upon between them from the beginning. No other appropriation was ever made. No representations were made to plaintiffs by the debtor or creditor that any other appropriation had been or would be made. There is no suggestion of actual fraud in the case. It is well settled that the ex-

ercise of the right of appropriation belongs exclusively to the debtor and creditor. No third party can be heard for the purpose of compelling a different appropriation from that agreed upon by them. 2 Whart. Cont. § 926. A surety cannot compel such an application of payments by the creditor as would most relieve him. Id. Judge STORY says the "right of appropriation is one strictly existing between the original parties, and no third party has any authority to insist upon an appropriation of such money in his own favor, where neither the debtor nor the creditor have made or required any such appropriation." *Gordon* v. *Hobart*, 2 Story, 243, 264.

See *Nichols* v. *Knowles*, 17 FED. REP. 494, and note, 495.—[ED.