Thomas W. Keelin, Appellee, v. Postlewait Company, Appellant.

### Gen. No. 16,508.

1. CHATTEL MORTGAGES—*rights of second mortgagee.* The provision of a note, secured by a chattel mortgage, to the effect that the monthly payments shall be taken out of the monthly bills for livery furnished mortgagee, may be waived, and although such bills are applied on' other indebtedness existing between the parties, a second mortgagee cannot complain, since he has only a right to redeem from the first mortgagee.

2. CHATTEL MORTGAGES—*mortgage on livery stable does not cover the business.* The general proposition, that proceeds realized from specific property will be applied toward payment of indebtedness against such property, does not apply where a livery stable is under chattel mortgage, since the mortgage is only a lien on the livery stock and not on the business.

3. CHATTEL MORTGAGES—*mortgagor may pay first mortgagee a commission.* An agreement that a chattel mortgagor, a liveryman,

shall pay the mortgagee a percentage of the gross income on a hearse and ambulance left at the stable, and a commission on business sent by him, is not fraudulent with reference to a second mortgagee.

4. Chattel mortgages—*not fraudulent for first mortgagee to wait until entire debt is due.* While a chattel mortgagee has the option to declare forfeiture upon default in one of a series of payments, he is not bound to act until the entire debt is due, and such delay is not fraudulent with reference to a second mortgagee.

5. Chattel mortgages—*new note does not release lien.* In an action in chancery, by second chattel mortgagee against the mortgagor and first mortgagee, a new note taken by first mortgagee for balance unpaid will not be held to release the mortgage lien as to the unpaid part.

Appeal from the Circuit Court of Cook county; the Hon. Thomas G. Windes, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1910. Reversed and remanded with directions. Opinion filed October 16, 1912. Rehearing denied October 30, 1912.

DeWitt C. Jones, for appellant.

William A. Doyle, for appellee.

Mr. Justice Graves delivered the opinion of the court.

On May 1, 1903, one Luke Wheeler bought of appellant, Postlewait Company, a livery stable. For part of the consideration he gave a $2,000 note, due in ninety days, and a $5,400 note, due in twenty-three months. These two notes were secured by a purchase money chattel mortgage on the property purchased. On the $2,000 note $1,500 was paid at maturity and a new note, designated as the Daum note, was given by Wheeler for the other $500. The $5,400 note was in the following words and figures:

"Chicago, May 1, 1903.

"On or before twenty-three months after date I promise to pay Postlewait Co. five thousand four hundred dollars, with interest thereon from date at the rate of six per cent. per annum. Value received. This note is secured by a chattel mortgage.

"Payment thereon is to be made in monthly installments of two hundred and fifty dollars each; the first payment to be June 20, 1903. It is agreed that said monthly payments are to be taken in livery hire by said Postlewait Co., which livery hire and service are to be satisfactory to said Postlewait Co. If the livery bill of said Postlewait Co. at the end of any month shall exceed two hundred and fifty dollars, the excess shall be paid to me; if the livery bill in any month shall be under two hundred and fifty dollars, the adjustment shall be delayed until the following month, and until the livery bill amounts to the sum of two hundred and fifty dollars or more. It being the intention to pay said indebtedness in livery hire to said Postlewait Co. as aforesaid within the period above specified at the rate of two hundred and fifty dollars per month.

"Luke Wheeler."

The $250 monthly payments provided for by the terms of the note were made according thereto for nine consecutive months. By these monthly payments the principal of the $5,400 note was reduced to $3,150. No other payments on either of these mortgage notes were made.

It is thus seen that there was still unpaid of the principal of the two notes secured by the mortgages the total sum of $3,650. The court later found that on the $500 still unpaid on the $2,000 note there was $47.50 accrued interest at the time the decree was entered and that at that time on the $5,400 note there was $362.25 accrued interest. Computation shows that to be correct. On the two notes, counting the accrued interest up to the time the decree was entered, there was then still unpaid $4,059.75, unless appellant had failed to give Wheeler credit for money that should have been applied to the payment of one or both of these notes

In August, 1904, Wheeler surrendered possession of the mortgaged property to appellant to be sold under the power given in the mortgage, and appellant pro-

ceeded to advertise the same for sale to take place August 27, 1904. On August 26, 1904, the day before the date fixed for the sale appellee filed his bill in chancery in the Circuit Court, in which he says that on July 16, 1903, Wheeler had given him a mortgage on the same property to secure the payment of a $2,000 obligation, which mortgage was in fact and by its terms subject to the mortgage of appellant; that the mortgage to appellant was fully paid; that there was no debt due appellant for which the property should be sold, and that appellant and Wheeler were conspiring together to defraud appellee of his rights. By the prayer he asks discovery of the property of Wheeler and that Wheeler be decreed to pay appellee the $2,000, and for the appointment of a receiver. By an amended bill appellee prays that appellant be required to set forth the amount of money received by it from Wheeler and all moneys coming into its hands from the business carried on by Wheeler or otherwise, and that appellant's mortgage be declared satisfied and for an accounting of all moneys in appellant's hands belonging to Wheeler in excess of the amount of money found due from Wheeler to appellant. An appropriate answer was filed to this bill by appellant. Wheeler who was made defendant made no answer to the bill and was defaulted.

On a hearing of the bill on the motion of appellee for the appointment of a receiver Samuel C. Postlewait was, on the same day the bill was filed, appointed receiver. On the following day the property was sold by the receiver as previously advertised by appellee as mortgagee for the foreclosure sale, and brought the gross amount of $4,450.40. The expenses of the receiver in and about completing the mortgage sale amounted to $264.25. And the expense of appellant in connection with the taking and advertising the property for sale up to the time the receiver was appointed, as allowed by the court, amounted to $778.49, making the total expense of the sale $1,042.74. Tak-

ing this amount from $4,450.40, the gross receipts of the sale, leaves in the hands of the receiver $3,407.66 as the net proceeds of the sale, which is less by $652.09 than the amount unpaid on the notes of Wheeler to appellant, which appellant claims were secured by the first mortgage, provided, as already suggested, that all the moneys that had come into the hands of appellant that should have been applied to the payment of these notes were so applied.

The issues made by the bill and answer of appellant were referred to a master in chancery to take proofs and report the same with his conclusions of law and fact to the court. Before he had concluded his duties as master in chancery his term as such officer terminated, and he was appointed special commissioner to complete his work under the original reference. In due time he filed his report as special commissioner, and all objections theretofore filed with the master to his report were ordered to stand as exceptions to the report in the Circuit Court. The Circuit Court overruled all the exceptions of appellant and all but two of the exceptions of appellee and entered a decree finding that Wheeler owed appellee for principal and interest on the note secured by the second mortgage the sum of $1,585.21, and that appellee had a superior and preferred lien on the funds in the hands of the receiver as against the claim of appellant for that amount and ordered the receiver to first pay that amount to appellee and then to pay two-thirds of the costs out of the balance left in his hands and, lastly, to turn over the remainder to appellant. There is no finding in the decree as to whether there was anything due from Wheeler to appellant or not, and if so, how much. From that decree appellant has prosecuted this appeal.

The decree does not contain sufficient findings of fact to disclose upon what theory it was entered, and we have searched the record in vain for evidence to warrant it. Appellee undertakes to justify it upon

several grounds. He first calls attention to the terms of the $5,400 note and to the fact that after February 1, 1904, the $250 monthly payments that by the terms of the note were to be made out of the monthly bills for livery furnished by Wheeler to appellant were not so made, but that the same was applied to the liquidation of other obligations, and insists that appellant had no right so to do, and that it is estopped as against appellee from saying that such amounts were not applied to the payment of the $5,400 note according to its terms. In disposing of that contention, as well as others to be considered later, let it be remembered that the only right a second mortgagee of chattels, made expressly subject to a first mortgage, acquires by virtue of his mortgage, as against a first mortgagee, so long as the first mortgage is in force, is the right to redeem from the first mortgage, that is, pay the debt secured by it. Arnold v. Stock, 81 Ill. 407; Sondheimer v. Graeser, 172 Ill. 293-297; Magerstadt v. Harder, 95 Ill. App. 303-308; Cunningham v. N. O. Nelson Mfg. Co., 17 Ill. App. 510; Pecker v. Silsby, 123 Mass. 108-110; Sawyer v. Pennell, 19 Maine, 167-171; Jones on Chattel Mortgages, sec. 494. The stipulation in the $5,400 note for the monthly payments to be made thereon out of the livery bills of appellant was clearly made for the benefit of Wheeler, and to bind appellant to patronize Wheeler's stable to the amount of at least enough to pay that note by or before the time of its maturity, and was one that the parties to it had the undoubted right to waive by mutual agreement. Whitney v. Traynor, 74 Wis. 289-297; Mack v. Adler, 22 Fed. 570; Capen v. Alden, 46 Mass. 268. Appellee's only right under his mortgage being to pay the first mortgage debt as it existed at the time he accepted the second mortgage he is in no position to complain of any one, if no part of that first mortgage debt was ever paid by Wheeler, or if he is compelled to pay it all, for that was the right he contracted for when he accepted his second mortgage. If the debt secured by

the first mortgage was reduced by payments by Wheeler in any form, appellee was fortunate to that extent, but he had no right to demand that Wheeler should pay any part of it. The special commissioner found that by a mutual agreement between Wheeler and appellant, which he found they had a right to make, the $250 that was originally intended to be applied monthly to the payment of the $5,400 was rightfully applied to defray the running expenses of the stables and other obligations due appellant. To this finding appellee excepted, in the Circuit Court, but the court overruled the same and thereby confirmed the finding. Waiving the question of the conclusiveness on this court of that finding, in view of the fact that appellee has assigned no cross-errors, we have carefully examined the evidence and are satisfied that the findings of fact are fully supported by the evidence, and that the findings of law are fully sustained by the authorities.

It is next insisted that where moneys are realized from some specific property or fund the courts will apply such moneys to the payment of indebtedness standing against such property or' fund. The statement is correct enough as a bald proposition of law, but it has no application here, because neither of the mortgages were liens on the proceeds of the livery business. The funds in question were the proceeds of the livery *business* and not the proceeds of sale of the mortgaged livery stock.

Appellee next contends that because some of the monthly payments on the $5,400 mortgage were not made when due, that the whole debt secured by the mortgage became due and that as the mortgagee did not take possession within a reasonable time after the first default, the continued possession of the mortgaged property in the mortgagor was fraudulent as to appellee. It is undoubtedly the settled law of this State that a mortgagee has the option to declare a forfeiture upon a default in one of several payments

maturing at different times, and to declare the whole debt due and take possession of the mortgaged property, but that he is not bound to do so until the entire debt secured by the mortgage is due. Cleaves v. Herbert, 61 Ill. 126; Wilson v. Rountree, 72 Ill. 570; Friend v. Johnson, 68 Ill. App. 661. In this case, the last installment of the indebtedness secured by the first mortgage was not due until April, 1905, more than a year after the first default. Appellant by exercising, as he might lawfully do, his option not to declare a forfeiture until August, 1904, lost none of his rights and the lien of his first mortgage on the property was unimpaired.

It is next urged by appellee that appellant was not entitled to 35% of the gross income of the livery stable from the use of a hearse and ambulance kept and used there, or to 10% on the livery business sent to Wheeler by appellant. Before Wheeler purchased the livery stable of appellant, there was in the stable a hearse and ambulance belonging to appellant, which was in the undertaking business, that Wheeler did not purchase, but which both Wheeler and appellant desired to have remain in the stable. A contract was, therefore, entered into between Wheeler and appellant that these vehicles should remain in the stable and be cared for, used and operated by Wheeler, but owned by appellant; that of the proceeds derived from the use of the same 35% should belong to appellant and 65% should belong to Wheeler. This contract was carried out during the entire time Wheeler ran the stable. The special commissioner found that the 35% of the proceeds of the use of these vehicles properly belonged to appellant and that it was entitled to retain the same. The Circuit Court overruled exceptions to that finding. Appellee has not challenged the correctness of this finding by any cross-error and the law and the facts, as disclosed by the evidence, fully support it.

The special commissioner found that appellant was not entitled to the 10% retained by it on the livery

business that was brought or sent by appellant to Wheeler and the court sustained that finding. This finding is assigned by appellant as error. We think a clear preponderance of the evidence shows that an agreement was entered into between appellant and Wheeler that, as to such livery business as appellant, in connection with its undertaking business, should bring or send to Wheeler, and which appellant should assume and guarantee the bills for, appellant should have 10% upon.

Furthermore, the accounts sent by appellant to Wheeler from month to month disclosed that appellant deducted said 10% upon said accounts, and said accounts were accepted by Wheeler without complaint or protest. Furthermore, it is uncontroverted that the arrangement for said 10%, as testified to by witnesses for appellant, was in accord with a uniform custom and usage in the business.

It is next contended that the taking of a new note for the $500 not paid on the $2,000 note is a release of the mortgage lien as to that unpaid part of the $2,000 note, and that such $500 cannot be counted as part of the debt secured by appellee's mortgage. In Flower v. Elwood, 66 Ill. 438, the Supreme Court, on page 446, said:

"As a general rule, the mere change in the form of the debt does not satisfy a mortgage given to secure it, unless it is intended to so operate. The lien of the debt attaches to the mortgaged property, and the lien can, as between the parties, only be destroyed by the payment or discharge of the debt, or by a release of the mortgage. Mere change of the form of the evidence of the debt in nowise affects the lien. A renewal of the note, its reduction to a judgment, or other change, not intended to operate as a discharge of the lien, still leaves it, as between the parties, in full vigor." See also Wilhelm v. Schmidt, 84 Ill. 183.

There is no evidence in this record tending to show that it was the intention of the parties to release the lien of the mortgage as to this $500 balance of the

$2,000 note. On the contrary, the evidence tends to show that the new note was not given as an extinguishment or payment of the debt, but as an evidence of its continuance. The mortgage was given as a security for the debt and the lien of the mortgage continued as to that $500 balance after the giving of the $500 note the same as before, and the same should be counted as part of the debt secured by the mortgage.

It is next contended that appellant charged and collected $105 per month rental on the stable, when it should have been $90 per month, and that the amount overcharged and collected should be applied to the payment of the mortgage debt. The proof shows that the lease was originally made to the party from whom appellant purchased the stable; that the rental by the terms of the lease was $90 per month; that when appellant purchased the stable it not only assumed the lease and agreed to pay the stipulated $90 per month, but gave $250 as a bonus for certain repairs put on the premises by the tenant; that the $250, when divided into monthly stipends for the time the lease had to run and added to the $90 stipulated rental, made the real rental paid by appellant to its assignors $105 per month and that Wheeler agreed to pay appellant the same amount. He in fact did pay that amount whenever he paid anything. There is nothing in this record to justify a holding that any part of the $105 per month rent collected by appellant from Wheeler should be credited on the mortgage indebtedness.

There are two other items aggregating $114.58 and made up of $83.33 for rent unpaid for the fraction of the month of August, 1904, up to the day the property was sold and $31.25 for telephone bills up to the same period and paid by appellant, which appellee claims should be charged to appellant as payments on the mortgage indebtedness. It is diffcult to tell from the evidence whether these bills were paid out of the proceeds of the business or the proceeds of the sale. The

money was in the hands of appellant and was paid out by it. The burden was on it to show that it came from some source other than a sale of the mortgaged property, and not having done so, we are inclined to charge it with the amount of these two bills as a payment on the mortgaged indebtedness.

We, therefore, find that it is established by the evidence that at the time the decree was entered there was unpaid on the $2,000 note $500 of the principal and $47.50 interest, and on the $5,400 note there was unpaid on the principal $3,150 and $362.25 interest, a total on the two notes of $4,059.75, less $114.58 not credited on the note, or a net balance of $3,945.17; that this balance was secured by appellant's mortgage; that this balance was a first lien on the mortgaged property and must be first satisfied out of the proceeds of the sale of the property after the proper costs and expenditures of the sale are paid. We further find that the evidence shows that the gross proceeds of the sale were $4,450.40; that the proper costs and expenses of the sale, as allowed by the court below, were $1,042.74; that the net proceeds of the sale were $3,407.66; that after applying the entire net proceeds of the sale to the payment of the amount due on the debt secured by appellant's mortgage, there is still unpaid thereon $537.51. It conclusively follows that appellee's bill was not sustained by the proof. The decree of the Circuit Court is, therefore, reversed and the cause is remanded with directions to that court to dismiss the bill for want of equity at the costs of the complainant therein.

*Decree reversed and cause remanded with directions to dismiss the bill.*