EMANUEL SONDHEIMER *et al.*

*v.*

JOSEPH GRAESER *et al.*

*Opinion filed April 21, 1898.*

1. MORTGAGES—*when rule that holder of a chattel mortgage must take possession on default does not apply.* The rule that the holder of a chattel mortgage, to protect his rights, must take possession within a reasonable time after default, has no application as between the mortgagee and the mortgagor, or purchasers from the latter before maturity.

2. SAME—*purchaser before maturity occupies no better position than his vendor.* A corporation acquiring property of its incorporators before maturity of a chattel mortgage thereon, is in no better position, as against the mortgagee, than the original mortgagors.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. JOHN GIBBONS, Judge, presiding.

The following is the statement of the case made by the Appellate Court:

"William D. Gibson filed a bill in equity in the circuit court of Cook county, making the Gassmann Parlor Frame Company, Catharine Gassmann, William Gassmann, Fred C. Mueller, George Lesprance, Henry Sondheimer and Max Sondheimer defendants, alleging, among other things, that the Gassmann Parlor Frame Company was indebted to the complainant in the sum of $103.66, and was also largely indebted to laborers and others, and that in September, 1895, when it was insolvent, it fraudulently executed a judgment note for a large amount and assigned its book accounts to E. Sondheimer & Co., etc. The prayer of the bill was for a dissolution of the corporation and for a receiver, etc. The other parties to this bill who were not originally made defendants to the bill were subsequently made parties and presented their claims by appropriate pleadings.

"The record discloses the following facts: Prior to the organization of the Gassmann Parlor Frame Company as a corporation, the Gassmanns were manufacturing frames under the firm name of Gassmann, Trumper & Co.  June 22, 1894, Catharine Gassmann, who seems to have been the owner of the property, executed to the order of Rees Bros. four promissory notes, one for the principal sum of $2055, due on or before July 1, 1895, and three for the sum of $200 each, and due, respectively, on the first days of July, August and September, 1894, and to secure the payment of said notes executed a chattel mortgage for the machinery, fixtures, etc., in the manufacturing plant of the Gassmanns.  Rees Bros. assigned the notes and mortgage to James W. Garvy, and Joseph Graeser, one of the appellees, subsequently became the owner of the notes and mortgage by assignment from William J. Garvy, administrator of the estate of James W. Garvy.

"After the execution of the notes and mortgage, on July 6, 1894, the Gassmann Parlor Frame Company was organized, and the plant of the Gassmanns, including the mortgaged property, was transferred to the new corporation.  The board of directors of the Gassmann Parlor Frame Company was composed of its officers, viz., William Gassmann, president, Max Sondheimer, treasurer, and Henry Sondheimer, secretary.  Max Sondheimer, the treasurer, and Henry Sondheimer, the secretary, were sons of Emanuel Sondheimer, and Max was also a member of the firm of E. Sondheimer & Co., the other members of that firm being Emanuel Sondheimer and Moses Katz.  The stock of the Gassmann Parlor Frame Company was divided into fifty shares, of the par value of $100 each, of which Henry Sondheimer held twenty-four shares and Max Sondheimer one share.  That these twenty-five shares were, in fact, the property of Emanuel Sondheimer & Co. is evident from the testimony of Max Sondheimer.  He says the firm of E. Sondheimer & Co. furnished the Gassmann Parlor Frame Company lumber

and all the money the company needed to do business; that they, E. Sondheimer & Co., backed the parlor frame company, and in consideration of that the twenty-five shares of stock were given them. He also says that he went into the directory because the firm of E. Sondheimer & Co. had sold the parlor frame company all the lumber it used, paid its notes and carried on its business, and that the parlor frame company was insolvent when he and Henry went into the directory. Henry Sondheimer testified that he had knowledge of most of the affairs of the parlor frame company as to its financial condition and standing, and that the business of that company was conducted with the money of E. Sondheimer & Co.

"September 16, 1895, the Gassmann Parlor Frame Company being then insolvent and indebted to E. Sondheimer & Co. to the amount of about $3386.45, William Gassmann, the president of the company, being thereunto authorized by the company's board of directors, executed a judgment note to E. Sondheimer & Co. for the sum of $3128.88. Max Sondheimer explains the discrepancy between the amount due and the amount evidenced by the note by saying that there were some items which, at the date of the note, had not been charged up in the ledger of E. Sondheimer & Co. Also, on September 16, 1895, the secretary of the Gassmann Parlor Frame Company, acting in pursuance of a resolution of the board of directors of said date, assigned to E. Sondheimer & Co. all the outstanding accounts and debts due to the Gassmann company as further security for the indebtedness to E. Sondheimer & Co. The resolutions of the board of directors authorizing the execution of the judgment note and the assignment of the accounts were passed by the votes of William Gassmann, president, and Henry Sondheimer, secretary, Max Sondheimer being present but not voting. Max at first voted in favor of assigning the accounts, but subsequently withdrew his vote.

"September 17, 1895, E. Sondheimer & Co. caused judgment to be entered in the Superior Court of Cook county on the judgment note above mentioned, sued out an execution on the judgment and caused the same to be levied upon the property of the Gassmann Parlor Frame Company, including the property described in the chattel mortgage assigned to Joseph Graeser, which property so levied on the sheriff took possession of and appointed Henry Sondheimer as custodian thereof. While these proceedings were in progress a bill was pending in the Superior Court, filed by William Garvy, administrator of the estate of James W. Garvy, deceased, for the foreclosure of the chattel mortgage in question, in which E. Sondheimer & Co. intervened, and, subsequently to the taking possession of the property levied on by the sheriff, Emanuel Sondheimer was appointed receiver in that suit, and by order of the court the sheriff turned over the property to him. September 27, 1895, the suit was dismissed, and the receiver in that suit then turned over the property to the receiver appointed by the circuit court in the present case. All of the property was sold by order of the court, and the proceeds of the sale, together with a small sum of money in the hands of the receiver, amounted to the sum of $2231.91. The court found that certain claims of laborers, amounting to the sum of $666.78, were a first lien on the fund; that this chattel mortgage of appellee Graeser was a second lien to the amount of $2400, and decreed that after paying said amounts the receiver should pay from any funds in his hands the claim of E. Sondheimer & Co. Appellants assign as error the finding of the circuit court that the chattel mortgage owned by appellee Graeser was a valid lien, and giving it priority to the claim of appellants."

BLUM & BLUM, for appellants.

BULKLEY, GRAY & MORE, for appellees.

Mr. JUSTICE WILKIN delivered the opinion of the court:

The only question in this case is whether the chattel mortgage under which appellees claim is valid, and it is questioned upon no other ground than that the holder of it failed to take possession of the property at the maturity of the secured debt. It has been often held by this court, that as between the mortgagee of chattel property and *bona fide* purchasers after maturity, or creditors, the mortgagee must take possession within a reasonable time after default. The rule, however, has no application between the mortgagee and mortgagor, or a purchaser from the latter before maturity. (*Arnold* v. *Stock*, 81 Ill. 407; *Sumner* v. *McKee*, 89 id. 127.) It cannot be seriously contended that, in view of these latter authorities, the parlor frame company could be heard to deny the validity of the mortgage in question, as against it, because of a failure on the part of the mortgagee to seize the property upon maturity of the last note falling due. It certainly occupied no better position in that regard than did the mortgagor to whose rights it succeeded before maturity and merely by its corporate organization. As to it the case is, on principle, not unlike *Sumner* v. *McKee, supra.* The Appellate Court, after the foregoing careful statement of the facts and circumstances of the case, say: "In view of these facts it may well be said that the appellants were, for all practical purposes, the Gassmann Parlor Frame Company, and so stood in no different relation to the mortgagee than did that company." We think this conclusion is fully sustained by the evidence.

The reason upon which the rule announced in *Reed* v. *Eames*, 19 Ill. 594, and later cases, is based does not apply as between these parties.

We think the Appellate Court properly sustained the validity of the mortgage, for the reason that appellants, in fact, occupy the same position as that of a mortgagor or one purchasing from him before maturity.

The fact that E. Sondheimer aided the parlor frame company in its efforts to prevent a foreclosure of the mortgage upon maturity of the first two notes, as stated in the opinion of the Appellate Court, at least strengthens the view that appellants were the real parties in interest, and in no próper sense innocent third parties.

We think the Appellate Court also properly disposed of the cross-errors assigned by appellees.

*Judgment affirmed.*