## Walter A. Mayr v. Hodge & Homer Co.

1. ASSIGNEE—*What the Law Requires for His Protection.*—All that the law requires for the complete protection of the assignee is that the transfer to him shall have been made in good faith, and without any intent to hinder, delay or defraud creditors.

2. CORPORATIONS—*Directors are Trustees for the Creditors When Insolvent.*—The directors of an insolvent corporation are trustees for the creditors of the corporation.

3. SAME—*Directors, as Creditors of, When Insolvent—Preferences.*—A director, being also a creditor of an insolvent corporation, can not lawfully procure or receive any advantage or preference in the payment of any claim he may have against the corporation at the expense of other creditors.

4. TRUSTEES—*Not to Appropriate the Property for Their Own Benefit.*—Trustees and persons standing in fiduciary relations are prohibited from exercising their powers or managing or appropriating the property of which they have control, for their own profit or emolument, or taking advantage of their situation to obtain any personal benefit to themselves at the expense of the *cestui que trust.*

5. SAME—*The Rule Applied to Insolvent Corporations.*—The basis of the rule is the duty which an insolvent corporation owes to its creditors, who can look only to the corporate assets for payment of the corporate debts.

6. ASSIGNMENT—*Where the Good Faith of the Transfer Must be Shown.*—If sufficient evidence be presented to cast suspicion upon the transfer by assignment, the good faith of the transaction must be shown.

7. SAME—*Presumptions in Favor of the Transfer.*—The assignee will in the first instance be entitled to the benefit of all presumptions in his favor, but those presumptions may be overthrown by proof as in any other transaction.

8. SAME—*When Fraudulent, Will Not Defeat an Attachment.*—If the assignment be direct from the debtor, and made without consideration, or with a fraudulent intent known to the assignee, it can not be availed of to defeat an attachment.

9. ATTACHMENT ACT—*Must be Liberally Construed.*—The attachment act must be construed in all courts in the most liberal manner for the detection of fraud.

**Attachment Proceedings—Garnishment—Pleas of Interpleader, etc.**— Trial in the Superior Court of Cook County; the Hon. JOHN BARTON PAYNE, Judge, presiding. Finding and judgment for plaintiff. Appeal by defendant. Heard in this court at the March term, 1898. Affirmed. Opinion filed October 17, 1898.

TENNEY, McCONNELL, COFFEEN & HARDING and E. C. LINDLEY, attorneys for appellant.

Appellant had a right, though treasurer of the defendant, the Chicago Sweeper Company, a corporation, to lend said corporation money, and receive in evidence thereof the defendant corporation's judgment notes. Mullanphy Savings Bank v. Schott, 135 Ill. 655; Hart v. Brown, 77 Ill. 226; Darst v. Gale, 83 Ill. 136; Beach v. Miller, 130 Ill. 162.

The defendant, the Chicago Sweeper Company, had a right to assign the policies of insurance held by it, and its claims for losses thereunder, to appellant as collateral security to its debt to him, even though it was insolvent at the time. Butler Paper Co. v. Robbins, 151 Ill. 588; Blair v.

Ill. Steel Co., 159 Ill. 360; Commercial Nat. Bank v. First Nat. Bank, 53 Ill. App. 358.

The president of a corporation can execute an assignment of its insurance policies, and claims for losses thereunder as collateral security to a debt of the corporation. Glover v. Lee, 140 Ill. 102; Bass v. The People ex rel., 159 Ill. 207.

The assignment of the insurance policies, and claims for losses thereunder, by the Chicago Sweeper Company to appellant, was not fraudulent.

To be fraudulent, it must be shown that the assignment was a contrivance or design between appellant and the Chicago Sweeper Company to injure appellee and other creditors in some right; and it must be impossible, from the evidence, to trace the assignment in question to an honest motive as easily as it is to trace it to a dishonest motive. McConnell v. Wilcox, 1 Scam. 344; Bowden v. Bowden, 75 Ill. 143.

To be fraudulent, it must be shown by a clear preponderance of evidence, that the assignment was *mala fide*. The evidence must be clear and cogent, and something more than mere circumstances of suspicion. Shinn v. Shinn, 91 Ill. 477; Towle v. Lamphere, 8 Ill. App. 399; King v. Brown, 24 Ill. App. 579.

To be held fraudulent, it must be shown by clear and satisfactory proof that the assignment was *mala fide*, and that both appellant and the Chicago Sweeper Co. participated in the fraudulent intent. Schroeder v. Walsh, 120 Ill. 403; Pratt v. Pratt, 96 Ill. 184; Bowden v. Bowden, 75 Ill. 143; Blow v. Gage, 44 Ill. 208.

Even if the assignment of the insurance policies to appellant was made for the purpose of hindering and delaying creditors on the part of the Chicago Sweeper Company, and appellant knew that that was the intent of the Chicago Sweeper Company, yet, as the Chicago Sweeper Company's debt to appellant was *bona fide*, and appellant received the policies for the purpose of securing said debt, the assignment was not fraudulent. Gray v. St. John, 35 Ill. 222; Kuhlenbeck v. Hotz, 53 Ill. App. 675; Shelley v. Boothe, 73 Mo. 74; Singer v. Goldenberg, 17 Mo. App. 549.

G. FRANK WHITE, attorney for appellee.

The officers of an insolvent corporation must not use up its assets in paying their own claims. O'Donnell v. Illinois Steel Co., 53 Ill. App. 314; McNeil v. Lacey, 33 Ill. App. 310; Beach v. Miller, 130 Ill. 162; Roseboom v. Whittaker, 132 Ill. 81; Atwater v. Am. Exchg. Nat. Bank, 152 Ill. 605.

No one but the stockholders can convey all the assets, even of a solvent company. At time of pretended assignment the insurance policies were substantially all the assets of the company. Conro v. Port Henry Iron Co., 12 Barb. 27; Abbott v. Am. Rubber Co., 33 Barb. 591.

MR. JUSTICE ADAMS delivered the opinion of the court.

December 9, 1896, appellee, a corporation, commenced suit by attachment against the Chicago Sweeper Company, also a corporation, and the writ was served upon the Firemen's and Merchants' Insurance Company and five other insurance companies, as garnishees. The indebtedness sued on was evidenced by a promissory note of date June 26, 1896, for the sum of $287.20, payable sixty days after date, to the order of appellee, and signed

"CHICAGO SWEEPER CO."
"J. C. WHIPPLE, Pres."
"W. A. MAYR, Treas."

The affidavit for attachment charged the fraudulent conveyance or assignment of the effects of the defendant in attachment, with the intent to hinder or delay its creditors, etc. June 9, 1897, appellant, by its present attorneys, filed, by leave of court, a plea of interpleader, alleging that prior to the commencement of the suit, the fund in the possession of the garnishees was assigned to him and was his property. July 9, 1897, appellee filed an answer to the plea, denying the alleged assignment, etc.

August 14, 1897, the Chicago Sweeper Company, by appellant's attorneys, filed a plea traversing the affidavit for the attachment. The same day the following order was, by consent of the Chicago Sweeper Company, entered in the cause:

" It appearing to the court from the interplea of said Walter A. Mayr, on file herein, that the fund in controversy herein is the amount alleged to be due on certain policies of insurance, issued by the garnishees in said cause, to the Chicago Sweeper Company, and it further appearing that said Walter A. Mayr claims that the fund in the possession of each of the garnishees was assigned to him prior to the service of the writ of attachment herein, and said Walter A. Mayr having paid to the clerk of said Superior Court the sum of $300, to stand in lieu of the fund in the possession of said garnishee—

" It is hereby ordered that said garnishees above named, and each of them, be and they are thereby discharged, and that said fund be subject to the future order of the court, for such disposition as justice may require.

" The Chicago Sweeper Company consents to the entry of the above order."

By agreement a jury was waived and the cause submitted to the court for trial. The court found the issues for appellee and rendered judgment accordingly, including in the judgment an order that the clerk of the court pay over to appellee's attorney the sum of $300, theretofore deposited with him, to be credited on the judgment theretofore rendered against the Chicago Sweeper Company.

The evidence heard on the issues formed by the traverse of the affidavit was, by consent, used on the trial of the issues arising on the plea of interpleader. The following are the main facts in the case : The Chicago Sweeper Company was organized in 1894, under the laws of this State. Its articles of association were not introduced in evidence, but appellant testified that the company was organized to manufacture carpet sweepers. Appellant became connected with the company in a business way some time prior to June, 1896, the precise time does not appear. He seems to have become the owner by purchase of certain patents for certain stretchers, and advanced money to the company to enable it to manufacture the stretchers. He was treasurer of the company up till some time between November 6 and

November 30, 1896. He testified that the business of the company was to manufacture his patents; that to enable it so to do he advanced, sometimes fifty, sometimes sixty and sometimes seventy-five per cent of the bills, and that he collected the bills due the company, for which he received a commission of five per cent on all bills collected. Again he says: "I furnished the money to continue business, so they could manufacture my patents and pay me a royalty." Also, that he was "the only man connected with the concern that had any money;" that he was the financial man of the company.

Whipple, president of the Carpet Sweeper Company, testified as to appellant's relation to the company: "He was a loaner of money and made himself treasurer, or was elected treasurer, or it was agreed that he should be treasurer and loan money to the company. He wanted to have something to say, I presume. In fact, he was consulted, and was really a part of the business. He was more interested than I was, because he had all the money in it."

The manufactory of the Carpet Sweeper Company was destroyed by fire December 5, 1896. J. B. Alton, the treasurer of appellee, on the 7th of December, the second day after the fire, met appellant at the place where the factory had been, and had a conversation with him, in relation to which he testified as follows: "I said, 'Mr. Mayr, you have run into a little hard luck with this fire.' He said, 'Yes, that it was a very strange fire; that it happened on Saturday night, and he hardly understood how it happened.' I talked with him a little about insurance. I said, 'Are you insured?' He said, 'Yes, we have insurance enough to cover the loss, if we can get it all.' I said, 'Where is Mr. Whipple?' Mr. Whipple was the man we did business with. He said he was in New York; 'I expect him back to-night.'"

December 8, 1896, appellant, by his present attorneys, entered a judgment by confession against the Chicago Sweeper Company on nine judgments, for the total sum of $2,532.61. The first of the notes is dated June 23, 1896, the last two November 30, 1896. All of the notes are pay-

able to the order of W. A. Mayr, contain powers of attorney to confess judgment, and are signed " Chicago Sweeper Co., J. C. Whipple, Pres." Seven of the notes are also signed " W. A. Mayr, Treas."; the last of the seven thus signed is dated November 6, 1896. The last two notes of the nine, of date November 30, 1896, are signed " A. E. Mayr, Treas." A. E. Mayr is appellant's wife. It does not appear from the record that any execution was issued on the judgment confessed as above stated.

December 8, 1896, the same day on which the judgment was entered, appellant, by the same attorney, filed a creditor's bill against the Chicago Sweeper Company and the insurance companies on said judgment, containing the usual general allegations of said bill, and alleging property of the Chicago Sweeper Company in the possession of the insurance companies.

On Tuesday evening, December 8, 1896, Whipple, the president of the Chicago Sweeper Company, returned to Chicago from New York. Whipple testified that he was met at the depot by appellant, who took him immediately to the Great Northern Hotel, where he met appellant's wife and another lady whom he did not know and had never seen before. The witness was interrogated and answered as follows:

Q. " When you got into this room where these people were, who did the talking?" A. " Mr. Mayr."

Q. " You mean Mayr, the interpleader?" A. " Yes, sir."

Q. " What did he say to you?" A. " He wanted me to assign the insurance to him."

Q. " Why?" A. " To protect him for the money he had loaned the company."

Q. " Was there any proceeding of any kind there, any resolution offered or anything else?" A. " Mr. Mayr had a lot of papers made out and presented to me to be signed."

Q. " Did anybody else ask you to do anything except Mayr?" A. " No, sir."

Q. "Was there a meeting of the board of directors there?" A. "That is what it was supposed to be, yes sir."

Q. "Do you know whether it was or not?" A. "I took it for granted it was."

Q. "There were no books there?" A. "No, sir."

Q. "Were any resolutions offered or produced there?" A. "My understanding is it was on those papers, type-written copies."

Q. "What did you say to him about assigning that insurance?" A. "I told him I did not like to do that without seeing my attorney."

Q. "What time of night was that?" A. "Eight o'clock, I think."

The witness does not state that the policies of insurance were assigned at the meeting referred to, but the assignments are dated December 8, 1896, the date of the meeting. The assignment of each policy is separate, describing the policy by number, the property covered, and the destruction of the property therein named on December 5, 1896, by fire. The assignments give Mr. Mayr full power to adjust and collect the insurance, and recite that they are made to Mr. Mayr to secure an indebtedness of the company to him for $2,533.

That the indebtedness evidenced by the notes on which judgment was entered by appellant against the Chicago Sweeper Company was a *bona fide* indebtedness of the company to appellant was not disputed by appellee on the trial. The indebtedness appears from the evidence of Whipple to have been partly for cash advanced by appellant and partly for commissions due him. The total of the insurance by the assigned policies was $4,000. Appellant, the assignee, testified on the trial that he had settled with the insurance company for $2,200. At the time of the assignment the Chicago Sweeper Company was insolvent. Whipple, president, testified that the amount of insurance was substantially all the assets of the company at the time of the assignment, and appellant testified that he took the bills of the company

and settled them, and they realized less than the indebtedness of the company. Appellant owned one or two shares and his wife two shares of the stock of the company.

Appellant's bill, filed December 8, 1896, is a mere creditor's bill, and no execution having issued on his judgment against the Chicago Sweeper Company or any summons on the bill so far as appears from the record, appellant required no lien by his bill. The only remaining question between appellant and appellee is whether the assignment of the insurance policies was *bona fide.* Appellant's counsel, in their argument, impliedly concede that if the assignment was not made in good faith it can not be upheld, saying : " The funds in question having been assigned to appellant prior to the institution of this suit, they belong to him unless the assignment was *mala fide.*"

." It is clear of any doubt that it is a *bona fide* assignment alone which can be successfully opposed to the attaching creditor." Drake on Attachment, Sec. 523.

"All that the law requires for the complete protection of the assignee is that the transfer to him shall have been made in good faith, and without any intent to hinder, delay or defraud creditors." Freeman on Executions, 2d Ed., Sec. 170. In Born v. Staaden, 24 Ill. 320, decided prior to the enactment of section 11 of our present statute on garnishment, the court say : "We are not now prepared to say that a *bona fide* assignment of a debt, before the service of garnishee process, may not defeat it, but it must be shown to be a *bona fide* assignment upon a consideration passed."

. It is well settled in this State that the directors of an insolvent corporation are trustees for the creditors of the corporation, and that a director, being also a creditor of the corporation, can not lawfully procure or receive any advantage or preference in the payment of his claim at the expense of other creditors. Beach et al. v. Miller, 130 Ill. 162; Roseboom v. Whitaker, 132 Ib. 81; Atwater v. Am. Exchange Nat. Bank, 152 Ib. 605.

In Roseboom v. Whitaker, the court, after stating the

rule as to directors of an insolvent corporation, say: "They are then within the scope of that wise and equitable rule adopted by courts of equity for the protection of *cestuis que trust* or beneficiaries, which prohibits trustees and persons standing in similar fiduciary relations to exercise their powers or manage or appropriate the property of which they have control for their own profit or emolument, or, as it is sometimes expressed, shall not take advantage of their situation to obtain any personal benefit to themselves at the expense of the *cestui que trust.*" The basis of the rule is the duty which an insolvent corporation owes to its creditors, who can look only to the corporate assets for payment of the corporate debts. The directors represent the corporation and manage its affairs either directly or by authorized agents. The evidence does not show that appellant was a director of the Chicago Sweeper Company, or that, at the time the assignment was made, he was a *de jure* officer of the company, but it does show that he furnished the money to carry on its business, and that he was, in fact, its financial manager and substantially controlled it. Whipple says: "He was consulted and was really a part of the business. He was more interested than I was, because he had all the money in it." Whipple, in so far as the control of the business was concerned, was little more than a figure head. He says he put no money into the business.

Appellant had and exercised more influence over the Chicago Sweeper Company than any single director ordinarily exercises over the corporation of which he is a director. He bore substantially the same relation to the corporation which Sondheimer & Co. did to the Gassmann Parlor Frame Company, in Sondheimer v. Graeser, 172 Ill. 293. In that case the Gassmann Parlor Frame Company stood in the position of a mortgagor of chattels to secure certain notes which had been assigned to Graeser. The evidence showed that Sondheimer & Co. furnished to the Gassmann Parlor Frame Company all the lumber and money which it needed to do business; also, that the treasurer and secretary of the company were sons of one of the Sondheimers, and that one

of them held twenty-four shares and the other one share of the stock of the company. The company executed a judgment note and assigned its bills receivable to E. Sondheimer & Co., who had judgment entered on the note and levied upon the mortgaged property. In the litigation which ensued Sondheimer & Co. attacked the mortgage on the ground that the holder had failed to take possession of the property at the maturity of the secured notes. But the court held that the Gassmann Parlor Frame Company could not set up such defense, standing, as it did, in the place of the mortgagee, and that, in view of the evidence, Sondheimer & Co. were practically the corporation. The court say: "The Appellate Court, after the foregoing careful statement of the facts and circumstances of the case, say : 'In view of these facts, it may well be said that the appellants were, for all practical purposes, the Gassmann Parlor Frame Company, and so stood in no different relation to the mortgagee than did that company.' We think this conclusion is fully sustained by the evidence." Appellant was, for all practical purposes, the Chicago Sweeper Company; the hands which signed the assignments were the hands of Whipple and appellant's wife, but the controlling influence which produced the signatures was the influence of appellant, the financial man and manager of the corporation. Applying the maxim that what one does by another he does himself, it may be said that appellant made the assignments; Whipple and his wife were his mere instruments. Appellant's counsel say the assignment was made "per a resolution of the directors." There is no evidence of any resolution passed by directors, or even that there were any directors, or, if any, who they were or how many there were. The only evidence of what occurred at the meeting at the Great Northern Hotel December 8, 1896, at eight o'clock in the evening, is that of Whipple, and it fails to prove that any resolution was passed or that there were any directors at the meeting. It is also urged that part of the business of the corporation was the manufacture and sale of carpet sweepers, and that appellant had no interest

in that part of the business.   Appellant's testimony on the subject is significant.   In answer. to an interrogatory by the court, he testified that the business of the company was to manufacture his patents; that it also manufactured carpet sweepers patented by another man.

By the Court:   Q.   "Did you get anything out of the carpet sweepers ?"   A.   "Not direct."

The necessary implication from the answer is that the witness profited indirectly by the manufacture of the carpet sweepers.   His counsel did not examine him further on that subject.   But it is contended that the remedy of appellee, if any, is to appeal to a court of equity to set aside the assignment; that the proceeding being at law, the trial court was powerless to disregard it, even though made in bad faith.   A garnishee proceeding is of an equitable character (Hodson v. McConnell, 12 Ill. 170), and courts of law, in protecting the rights of equitable assignees, exercise equitable power.   The appellant is but an equitable assignee of the policies of insurance; he could not, in his own name, sue at law on the policies.   If he can invoke the exercise of equitable power by a court of law for his protection, it would be singular if the court could not also exercise such power for the protection of the attaching creditor as against him.   The law is not thus inconsistent.   Drake, in his work on Attachment, 5th Ed., Section 615, says:   "In any case of the transfer of evidences of debt, where the assignee undertakes to assert title through such transfer, the good faith of the transaction may, of course, be the subject of inquiry and must be shown, if sufficient evidence be presented to cast suspicion upon it.   The assignee will, in such case, be entitled, in the first instance, to the benefit of all presumption in his favor, but those presumptions may be overthrown by proof as in any other transaction.   If the assignment be direct from the debtor to him, and made without consideration, or with a fraudulent intent, known to the assignee, he can not avail himself of it to defeat the attachment."   Section 41 of the attachment act provides: " This act shall be construed in all courts in the most lib-

eral manner for the detection of fraud." In Everingham
v. Nat. Bank, 124 Ill. 527, 541, the court say : "In Han-
nibal & St. J. R. R. Co. v. Crane, 102 Ill. 249, it was held
that our statute relating to attachments, from its provisions
and the spirit of the whole act, should receive a liberal con-
struction."

We are of opinion that the trial court was warranted by
the evidence in finding that the assignment was not made
in good faith. Appellant's counsel complain of the refusal
by the court of appellant's fifth and sixth propositions,
which are as follows :

5. "Even if the assignment of the insurance policies to
Mayr was made and received with the knowledge that it
would prevent the plaintiff, or other creditors, from collect-
ing their claims, and of preferring Mayr in the disposition
of the defendant's assets, yet, if it was made for the pur-
pose of securing a debt which the defendant corporation
owed Mayr, it was not fraudulent or void, and the finding
should be in favor of the interpleader."

6. "The court holds that the fact that Walter A. Mayr
had a contract with the defendant company, by which it
manufactured curtain stretchers, the patent for which was
owned by said Mayr, and paid him a royalty upon the
articles so manufactured; that he advanced money to the
defendant company for the purpose of enabling it to carry
on its business and to manufacture these articles under his
patents; that he also from time to time advanced money to
the company upon its bills for goods sold by it to its cus-
tomers, receiving a discount of five per cent; that he was
the man principally interested financially in said com-
pany; that his wife succeeded him as treasurer of the com-
pany, and was the holder of two shares of its stock, and
that the company was insolvent on December 8, 1896, and
at his request assigned the insurance money to him to
secure his claim, does not show, or tend to show, that the
assignment by the defendant of the policies of insurance
upon its property, to said Mayr, was made with the fraud-
ulent intent, on the part of the company, of hindering or

delaying its creditors, or that Mayr knew of or participated in any such fraudulent intent."

The fifth proposition is erroneous in not excluding fraudulent intent. The assignment may have been made for the two-fold purpose of securing appellant's debt, and also of hindering or delaying creditors. It is not necessary to sustain an attachment that a conveyance or assignment has been made for the sole purpose of hindering or delaying creditors. Reed v. Noxon, 48 Ill. 323; see also Beidler v. Crane et al., 135 Id. 92, 100, and Phillips v. Kesterson, 154 Id. 572.

In the last case the court say : " When the conclusion necessarily results that a conveyance was made with such fraudulent intent to hinder and delay creditors, it can make no difference that with such purpose existing, there were combined other motives, at the time of making it."

We can not assent to the proposition that the facts stated in the sixth proposition do not tend to show fraudulent intent. It is certainly competent to prove such facts as those stated in the proposition, for the purpose of showing fraudulent intent, and the proof can only be competent on the theory that it tends to prove the intent. Six links of a chain of evidence may not prove the issue in favor of the party producing the evidence, while proof of another link may complete the chain and so prove the issue. In such case could it be said that the first six links did not tend to prove the issue ? The proposition purports to be a summary of the facts, and as such it should be complete, as the finding must be on the whole evidence. C., B. & Q. R. R. Co. v. Griffin, 68 Ill. 499; Evans v. George, 80 Ib. 51.

In Martin v. Johnson, 89 Ill. 537, an instruction purporting to state all the facts was given, in respect to which the court say : " This mode of instructing juries has often been condemned. Hatch v. Marsh, 71 Ill. 371; Homes v. Hale, Id. 552; Ogden v. Kirby, 79 Id. 561; Evans v. George, 80 Id. 51. It is utterly impracticable to embody all the facts of a case in an instruction," etc. Facts bearing on the questions at issue are omitted from the sixth proposition. For

instance, appellant's wife not only succeeded him as treasurer, but was treasurer when the assignment was made. The uncontradicted testimony of Whipple, the president of the Chicago Sweeper Company, speaking of appellant, is: " In fact he was consulted and was really a part of the business. He was more interested than I was, because he had all the money in it." These and other material facts are omitted from the proposition.

The judgment will be affirmed.