## Charles W. Hinkley v. Alanson H. Reed et al.

1. EQUITY JURISDICTION—*A Fundamental Rule.*—It is a fundamental rule in equity jurisdiction that a court of equity will look to the substance rather than the form of a transaction.

2. SAME—*Power to Ignore Corporate Existence.*—A court of equity will sometimes ignore corporate existence, in order to do justice.

3. FRAUDULENT TRANSFERS—*By Insolvent Firms.*—Where an insolvent partnership makes a transfer of all of its assets and good will to a corporation created by the partners for that purpose, takes its pay in stock of such corporation, assumes control as officers of such corporation, and enters into the management of its business, creditors of the firm may levy an attachment or execution on the property, or reach the stock, or file a bill in equity to set the transfer aside.

4. VOLUNTARY ASSIGNMENTS—*Where the Assignor has no Title.*—An assignor who derives title to the goods he assigned through a fraudulent and void conveyance, can convey to his assignee no greater or better title than he has himself.

Creditor's Bill.—Trial in the Circuit Court of Cook County: the Hon. RICHARD S. TUTHILL, Judge, presiding. Bill dismissed for want of equity; appeal by complainants. Heard in this court at the October term, 1898. Reversed and remanded with directions. Opinion filed March 10, 1899.

This is a creditor's bill by appellant against Alanson H. Reed, J. Warner Reed, A. Reed and Sons, a corporation, J. W. Reed, Jr., George H. Signor, and the Chicago Title & Trust Company. The court dismissed the bill for want of equity. The defendants to the bill answered and replications were filed.

The parties stipulated as follows:

" The following are agreed upon as the existing facts to govern upon the hearing of the above entitled cause:

That on the 4th day of May, A. D. 1898, complainant commenced a suit in assumpsit in the Circuit Court of Cook County against the defendants, Alanson H. Reed and John Warner Reed, copartners as A. Reed & Sons (hereafter called principal defendants), and on the 31st day of May, 1898, recovered judgment against said principal defendants for the sum of $595.19 and costs of suit, in the said Circuit Court of Cook County.

That on or about the tenth day of June, 1898, a writ of fieri facias was issued upon said judgment, and on the 30th day of June, 1898, delivered to the sheriff of Cook county, and on the 8th day of July, 1898, after demand having been made on said principal defendants, said writ was returned *nulla bona*, as set forth in the bill of complaint herein. That a writ of fieri facias was also issued and delivered on or about July 1, 1898, to the sheriff of Lee county, Illinois, and that on the 8th day of July, 1898, said last mentioned writ was returned *nulla bona*, as set forth in said bill.

That the said judgment remains in full force and effect, and is unpaid and unsatisfied, and that there is due thereon the sum of $595.19, together with costs, and interest from the 31st day of May, 1898.

That said judgment was entered upon a promissory note executed by said principal defendants on December 30, A. D. 1897, and payable four months thereafter, and acquired by complainant in good faith before maturity for a good and valuable consideration, and that the said judgment was obtained after due service of process upon said principal defendants.

That said principal defendants had been engaged in business for a number of years in Chicago, and were possessed of personal property in Chicago, and had a manufacturing establishment, consisting of machinery, tools, material, pianos in process of manufacture and manufactured, at Dixon, Lee county, Illinois, and an interest in the building

containing the same, and the ground upon which said building was located.

That the firm composed of said principal defendants had incurred large liabilities, and said firm and the principal defendants were insolvent on the 27th day of May, 1898, and their liabilities exceeded their assets.

That on the 27th day of May, 1898, said principal defendants caused to be recorded a charter issued on March 20, 1897, by the Secretary of State of Illinois to a corporation known as A. Reed & Sons, defendant herein, in pursuance of a license issued March 21, 1895; that the meetings for the organization of said corporation and for the election of directors thereof, were held at the office of said principal defendants; that the defendant Alanson H. Reed subscribed for five hundred shares; defendant John Warner Reed, for four hundred and ninety-seven shares, and J. W. Reed, Jr., George H. Signor and A. L. Reed, for one share each; and that said principal defendants and George H. Signor were elected directors of said corporation on the 27th day of May, 1898, and on the same day said principal defendant Alanson H. Reed was elected secretary and treasurer of said corporation, and said principal defendant J. Warner Reed was then elected president thereof, and said defendant George H. Signor was then elected vice-president thereof; that said corporation did not complete its organization by recording its charter, nor proceed to business, until the 27th day of May, 1898, and prior to that date had acquired no assets and done no business. That on said 27th day of May, 1898, the principal defendants, in consideration of the issue to them of five hundred shares of full paid capital stock of said corporation, transferred to it all of the assets and good will of their firm, and that no other consideration for such transfer passed, and that none of the indebtedness of said firm was at that time assumed by said corporation, and that said corporation thereupon took possession, charge and control of said assets and of the business, and issued two hundred and fifty shares of stock of said corporation to each of said principal defendants; that one share was issued to said Signor for services rendered by him in the organization of said corporation and for taking care of the books thereof, and that no other stock has been issued.

That said principal defendants, as officers of said corporation, entered into the management and control of its business and continued the same until the appointment of a receiver by this court, in the case of the New York Life

Insurance & Trust Company against the said principal defendants and others, as hereinafter set forth; that the same office was retained and the principal defendants, as officers of said corporation, remained in control of the business, but that they made the offer to a number of their creditors to resign in favor of officers to be chosen by a majority of their creditors, and made the same offer in open court, upon the application for a receiver in said New York Life Insurance & Trust Company's case; but that new books of account were opened for such corporation.

That a deed for voluntary assignment for the benefit of creditors was executed by said principal defendants on the 28th day of May, 1898, delivered to George H. Signor, as assignee, and duly filed for record in the recorder's office and County Court of Cook County aforesaid, and that said Signor duly qualified, as assignee, and gave bond as provided by the statute.

That the circular letter set forth on pages 12 and 13 of the bill of complaint herein was mailed by said principal defendants to all their creditors so far as known.

That a creditor's bill was filed on June 21, 1898, by the New York Life Insurance & Trust Company against said principal defendants, herein named, and others, and a receiver was appointed thereunder, of the assets of said principal defendants, and that said receivership was, afterward, on June 24, 1898, extended to said corporation, and that such receivership continued until the 8th day of July 1898, when said suit was dismissed, and the receiver appointed therein discharged.

That on said 8th day of July, after the dismissal of said cause, a meeting of the directors of said corporation was held, at which the following resolutions were adopted:

Resolved, that whereas, on the 27th day of May, A. D. 1898, the firm of A. Reed & Sons assigned, transferred and conveyed to this company all of the assets, good will and business of said firm, which transfer, while intended in good faith, has been held by the Circuit Court of Cook County to have been in law fraudulent, because none of the debts of said firm were assumed by this company.

Be it therefore resolved, that this company assumes all of the indebtedness of the firm of A. Reed & Sons existing at the time of such transfer, and agrees to pay the same, and inasmuch as this company is now believed to be insolvent, and it is desirous that all of its creditors shall share alike, be it further

Resolved, that this company do make a general assignment to the Chicago Title & Trust Company, as assignee, of all its assets for the benefit of its creditors. That the assignment deed be made in duplicate, one copy to be recorded in Cook county, and one in Lee county, Illinois, and that the president and secretary of this company are hereby instructed to execute such deed of assignment,' and at the same time made a general assignment for the benefit of its creditors to the Chicago Title & Trust Company, as assignee without preferences; that said deed was made in duplicate, and was recorded in both Cook and Lee counties, Illinois, on the 9th day of July, 1898.

That said corporation had possession and control of the assets of said firm for a brief period, to wit, from the 27th day of May, 1898, to the 24th day of June, and on the 8th day of July, 1898, and did little business, and contracted very little indebtedness, aside from the liabilities assumed by it, as aforesaid, of the indebtedness of the principal defendants, and aside from the aforesaid assumed liabilities, was solvent at the time of making said assignment.

That the factory and grounds at Dixon, Illinois, where the said principal defendants were manufacturing their pianos, were held by virtue of a lease and agreement, dated March 14, 1894, which provided that said principal defendants might occupy the same for five years, free of rent, and, if during the said period, they should continuously, in good faith, there manufacture their pianos, and not elsewhere, they should receive, at the expiration of said period, a warranty deed of the factory and grounds; that a failure to manufacture pianos there, for the space of three months continuously (except on account of labor strikes, etc.), should forfeit their rights under said lease and agreement. That their rights under said agreement should be in no wise transferable, except to a corporation to be organized to continue the business of manufacturing their pianos.

Dated this 8th day of September, 1898.

M. B. & F. S. LOOMIS,
Sol'rs for complainant.
SAMUEL M. BOOTH,
Sol'r for defendants."

The circular referred to in the foregoing stipulation is as follows:

"CHICAGO, June 7, 1898.

GENTLEMEN: We have been compelled by force of circumstances to make an assignment Saturday, May 28th,

Hinkley v. Reed.

for the benefit of our creditors.    Previous to doing so we transferred to A. Reed & Sons, a corporation organized under the laws of the State of Illinois, all our assets, including the lease of the factory building at Dixon. Ill., bills, stock and materials on hand, and bills and accounts receivable.

We receive in exchange therefor 500 shares of the stock of A. Reed & Sons corporation, of the par value of $100 each, $50,000, and this we handed over to our assignee, Mr. Geo. H. Signor, our former bookkeeper.

We were led to do this by the actions of certain of our creditors, who, in their efforts to gain advantage over others, seemed willing that any sacrifice of our assets should be made if they should thereby gain preference for themselves.

It has been our intent that all should share alike, as far as it has been in our power to accomplish that result.    Our factory at Dixon, Illinois, is held under a contract dated March 14, 1894, whereby it becomes our absolute property at the end of five years, provided the business was carried on continuously during that time.

It is also stipulated in the contract that our right is in no way transferable, except to a stock company of the same name which might be organized to succeed our firm and continue the business.    We had been negotiating with different parties to secure additional capital, and had secured the necessary charter from the State for a stock company. In view of our recent financial difficulties, and in order to continue the business, prevent the sacrifice of our assets, and secure the factory and plant for the benefit of all, we thought it best to transfer to the new company all our assets as stated above.

At the earliest practical moment we shall call a meeting of our creditors, of which due notice will be given, to explain the condition of our affairs and confer with them as to the best course to be taken.    We believe, with a proper extension and the support of our creditors, that, in time, all our indebtedness can be paid off.    Regretting the present unfortunate state of affairs, we remain,

Yours truly,<br>A. REED & SONS."

The bill prayed, among other things, that the transfer by the firm of A. Reed & Sons of their property to the corporation, A. Reed & Sons, and the voluntary assignment

by said firm to Signor, should be declared fraudulent and void and set aside, and that the Chicago Title & Trust Company be decreed to hold the property assigned to it in trust for the benefit of Alanson H. and J. Warner Reed, etc.

M. B. & F. S. LOOMIS, attorneys for appellant, contended that the authorities clearly establish two distinct grounds upon which conveyances and other contracts will be deemed fraudulent as against creditors : First, such as are entered into with a fraudulent intent; and, second, such as, from the terms of the agreement, or the nature of the transaction itself, are deemed so as a mere inference of law, without regard to the motives or actual intentions of the contracting parties. In the first class of cases the fraudulent intent is always a question of fact, to be established by extrinsic proofs. In the latter, the agreement, under the circumstances shown, is deemed fraudulent, although the parties may have acted in the best of faith.

Apt illustrations of the latter class of cases are found in the case of an insolvent person who transfers his property to another, reserving to himself a beneficial interest therein; or where one, being insolvent, disposes of the whole of his estate upon a long credit, thereby putting it beyond the reach of his creditors; or where one, by a contract not in writing, makes a sale of chattels and retains possession thereof. All such contracts and transactions are conclusively presumed, as an inference of law, to be fraudulent, without regard to the real motives or purposes of the parties. Lanson v. Funk, 108 Ill. 502; Thornton v. Davenport, 1 Scam. 296; Phelps v. Curts, 80 Ill. 109; Greenebaum v. Wheeler, 90 Id. 296; Kepner v. Burkhart, 5 Barr. 478; Grannis v. Smith, 3 Humph. 179; Mitchell v. Beal, 8 Yerg. 134.

In equity a junior judgment creditor may obtain a prior lien by exhausting his remedy at law, and first invoking the aid of a court of equity by filing his creditor's bill. So that the only importance to be attached to the question as to when the executions were in the hands of the sheriff, is that they were there before the filing of the bill.

See, on this subject, Hallorn v. Trum, 125 Ill. 247; Durand & Co. v. Gray, Kingman & Collins, 129 Ill. 9; Lyon v. Robbins, 46 Ill. 276; Rappelye v. International Bk., 93 Ill. 396; cases *pro* and *con* in 17 L. R. A. 345, *et seq.;* Bump on Fraudulent Conveyances, 534; Moore v. Horsley, 156 Ill. 36; Springfield Homestead Ass'n v. Roll, 137 Ill. 205; Tyler v. Tyler, 126 Ill. 525.

SAMUEL M. BOOTH, attorney for appellees.

MR. JUSTICE ADAMS delivered the opinion of the court.

It appears from the stipulation of facts that Alanson H. Reed and John Warner Reed, composing the partnership firm of A. Reed & Sons when, May 27, 1898, they caused to be recorded the certificate of organization of the corporation A. Reed & Sons, and attempted to transfer their property to that corporation in exchange for stock, were insolvent, and that their liabilities exceeded their assets. It also appears from the circular which, by reference, is made a part of the stipulation of facts, that one object of the partnership firm of A. Reed & Sons in so transferring their assets and property to the corporation, was to hinder and delay certain of their creditors who, in the exercise of their legal rights, were making efforts to collect their claims against the firm. In the circular, after mentioning the transfer of their assets to the corporation, they say : " We were led to do this by the actions of certain of our creditors who, in their efforts to gain advantage over others, seemed willing that any sacrifice of our assets should be made, if they should thereby gain preference for themselves." It further appears from the stipulation of facts, that after the transfer to the corporation, there was no change in the possession of the assets of the copartnership, or in the control or management of the business. The Reeds, one the president, and the other the secretary and treasurer of the infant corporation, retained possession of the assets and managed and controlled the business precisely as before. There were three directors, the Reeds being two of them, and Signor, their bookkeeper, the third.

It is fundamental in equity jurisprudence that a court of
equity will look to the substance rather than the form of a
transaction. 1 Beach on Mod. Eq. Jurisp., Sec. 7; 1 Pom-
eroy's Eq. Jurisp., Sec. 363.

In Anthony et al. v. Am. Glucose Co., 146 N. Y. 407, the
court uses this language:

"There are two theories of the facts of this case; one
technically true but substantially an error; the other really
true but formally open to criticism; and upon our choice
between them will be quite certain to depend the ulti-
mate conclusion. One theory interposes between the par-
ties interested and actually contracting, the corporate
entities of the five original companies, and behind that
legal shelter seeks to protect the company in default to
its stockholders and turn them over for relief to their own
original company after, by agreement, all its functions
had ceased, although possibly it may not be altogether and
hopelessly dead. The defense is not meritorious. It sim-
ply attempts to substitute circuity of action for direct
responsibility, and requires us to blind our eyes with the
theoretical abstraction so as to shut out the obvious and
undoubted truth. We have of late refused to be always
and utterly trammeled by the logic derived from corpo-
rate existence, when it only serves to distort or hide the
truth, and I think we should not hesitate in this case to
reject the purely technical defense attempted."

In Sondheimer et al. v. Graeser, 172 Ill. 293, the court
did not hesitate to hold that Sondheimer & Co., who largely
controlled a corporation which succeeded to the rights of a
mortgagor, sustained the same relation to the mortgagee as
did the mortgagor, and that they, Sondheimer & Co., were
practically the corporation. In that case, Sondheimer &
Co's. control of the corporation was not nearly so great as
was the control of the Reeds of the corporation A. Reed &
Sons. The Reeds were the corporation and the corporation
was the Reeds. The corporation was a mere dummy, and
the substance of the transaction was that the Reeds, in
formally transferring the assets to the corporation, really
retained them in their own possession and control. There
was a mere paper transfer, nothing more. "The court will
sometimes ignore the corporate existence in order to do
justice." 1 Cook on Corp., 4th Ed., Sec. 6.

The same author writes thus:   " The rules laid down in the preceding sections are applicable in most respects to a sale by a partnership of all its property to a corporation in. exchange for stock.   Such sales often are made in order to merge a solvent copartnership into a corporation.    They are also made sometimes by an embarrassed or insolvent firm. In such a case, the creditors of the firm may object.    They may levy an attachment or execution on the property, or reach the stock, or file a bill in equity to set the sale aside," etc., citing cases.    2 Id., Sec. 675.

In Booth v. Bunce, 33 N. Y. 139, the creditor of an insolvent firm, which had formed a corporation and transferred its property to it, levied an execution on the property as the property of the copartnership firm.    The court held that the transfer was void, and that the title remained in the copartnership and the property was subject to the execution.

To the same effect are Buell et al. v. Rope et al., 39 N. Y. Supplement, 475, and  Skinner v. Terhune, 45  N. J. Eq. 565.   The pretended transfer by the Reeds to the dummy corporation being void, the title to the partnership property  did  not  pass  to  the corporation, but  remained in the Reeds.

The next question is as to the effect of the assignment of May 28, 1898, by the Reeds to George H. Signor.   The circular states, " That a deed of voluntary assignment for the benefit of creditors was executed by said principal defendants on the 28th day of May, 1898, delivered to George H. Signor, as assignee, and duly filed  for record in the recorder's office and County Court of Cook County aforesaid, and that said Signor duly qualified as assignee, and gave bond as required by the statute."

Alanson H. and John W. Reed, in their answer to the bill, admit that on the 28th day of May, 1898, they executed and delivered to Signor a deed of assignment of all of their property for the benefit of their creditors, etc.   The assignment by the Reeds to Signor of all their property, vested in Signor, as such assignee, title to all the property of the Reeds, for the benefit of their creditors, and the assigned

estate is to be administered and settled by the assignee subject to the directions of the County Court, and as prescribed in the act concerning voluntary assignments. Inasmuch as no title passed to the corporation, A. Reed & Sons, by the pretended transfer to it of date May 27, 1898, the assignment by that corporation to the Chicago Title & Trust Company, of date July 8, 1898, was ineffective to convey to the Chicago Title & Trust Company any title to the property and assets of the Reeds. The title to the property of the Reeds having passed to George H. Signor, by the assignment to him, and the County Court having acquired jurisdiction over the same prior to May 31, 1898, the date of appellant's judgment, appellant acquired no lien on the property, and is not entitled to be preferred to other creditors in the administration of the insolvent estate. Appellant, however, is entitled to have the pretended transfer to the corporation, A. Reed & Sons, set aside and declared void. Clinton Hill Lumber Co. v. Strilby, 52 N. J. Eq. 576; Metcalf v. Arnold, 110 Ala. 180; Buell v. Rope, *supra*.

This being true, the bill should not have been dismissed. The decree will be reversed and the cause remanded, with directions to enter a decree declaring fraudulent and void the pretended transfer by Alanson H. Reed and John Warner Reed to the corporation, A. Reed & Sons, and that the assignment of May 28, 1898, by the Reeds to George H. Signor, for the benefit of the creditors of the Reeds, was valid and effectual, as a voluntary assignment, to invest said Signor with title to all of the assets and property of the Reeds, and that the said pretended assignment by the corporation A. Reed & Sons to the Chicago Title & Trust Company of date, to wit, July 8, 1898, was of no force or effect, and was ineffective to convey title to any property or assets theretofore owned by the Reeds or in which they theretofore had any interest.

Reversed and remanded with directions.